UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JIMMY BILSKEY, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 1:13-cv-62 SNLJ |
| ) | |
| BLUFF CITY ICE, INC., et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiffs filed a four-count complaint against defendants Bluff City Ice, Inc., and its owner Carl Hughes, seeking to recover unpaid wages, liquidated damages, attorney fees, and other relief for violations of the Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA"), the Missouri Minimum Wage Law, §290.500 R.S.Mo. et seq. ("MMWL"), and Missouri common law. Plaintiffs move to conditionally certify the class they seek to represent (#27) for Count I, which encompasses violations of the FLSA. The matter has been fully briefed and is now ripe for disposition.

**I.     Background**

According to the Complaint, plaintiffs Jimmy Bilskey and Leo O'Hara worked for the defendants as delivery drivers. Their duties included loading and unloading ice, ensuring the delivery truck was functional, stacking pallets, and making deliveries of ice to customers. Plaintiffs allege that defendants violated the FLSA by failing to pay their non-exempt employees overtime rates for work in excess of 40 hours per week. Specifically, plaintiffs allege that their work hours were recorded by a time clock on which they and other employees "punched" in and

out.  Plaintiffs allege they were instructed not to punch in to work until they had completed approximately 30 minutes of "prep work" before their shifts began.  Such prep work included checking to make sure their delivery trucks were fully functional and insuring product load was accurate.  In addition, plaintiffs allege they were instructed to punch out of work before they performed approximately 40 minutes of "check-out work" after their shifts.  Check-out work included checking the truck to make sure it was fully functional and filling out paperwork.

Plaintiffs purport to bring their claims on behalf of all similarly situated individuals. Count I is for failure to pay overtime in violation of the FLSA.  Count II is for violations of the MMWL, including failure to pay overtime and failure to keep accurate records of hours worked. Count II-2[1] is for breach of contract for the alleged failure of defendants to compensate plaintiffs for all hours worked.  Count III is for unjust enrichment and seeks damages equal to all unpaid wages from the five years preceding the complaint.  Count IV is for quantum meruit and similarly seeks damages equal to unpaid wages from the five years preceding the filing of the complaint.

Plaintiffs have moved to conditionally certify the class of current and former employees of defendants who performed work for defendants over the past three years.  (#27.)

## II.     Motion to Conditionally Certify Class

Under 29 U.S.C. § 216(b), an employee may bring an action under the FLSA on his own behalf as well as for those "similarly situated."  The FLSA does not define "similarly situated," and the Eighth Circuit has not addressed what standard should be applied to the phrase.  *Huang*

---

[1]Plaintiffs have two Count IIs, which appears to be a typographical error.  The Court has labeled the second "Count II" as "Count II-2."

*v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008). However, district courts in this Circuit have conducted a two-step analysis to determine whether employees are "similarly situated." *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1016-17 (E.D. Mo. 2010). The first step is the "notice stage," in which plaintiffs seek early conditional class certification and notify potential class members of the case. *Id.* The second step is the "merits stage," which takes place after discovery and during which defendants may move to decertify the class. *Id.* at 1017. We are in the first stage of that analysis.

Plaintiffs' burden at the "notice stage" is not onerous: conditional certification "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.* Plaintiffs may satisfy this burden through affidavits, supported by admissible evidence. *Id.* "The plaintiffs may not meet this burden through unsupported assertions of additional plaintiffs and widespread FLSA violations." *Id.* The Court does not need to determine whether class members are *actually* similarly situated until the "merits stage" of the litigation, when defendants typically move to decertify the class. *Id.*

### III. Discussion

Plaintiffs claim that defendants had a corporate-wide common policy and practice whereby the delivery drivers were not compensated for all compensable hours worked. That policy and practice allegedly resulted in each member of the putative class working many uncompensated hours, including many in excess of 40 hours per week. In addition, they allege members of the putative class were not paid at a rate of one-and-a-half times their regular rate of pay for all hours worked in excess of 40 hours.

### A. Conditional Class Certification

"In a typical case, the court decides whether to conditionally certify a class based solely on the plaintiff's affidavits." *Id.* (citing *Huang*, 248 F.R.D. at 227). Here, the plaintiffs have supplied deposition testimony, which is also acceptable evidence. *See, e.g.*, *Perrin v. Papa John's Int'l, Inc.*, 4:09CV01335 AGF, 2011 WL 4089251, *2 (E.D. Mo. Sept. 14, 2011) (holding that plaintiff's deposition testimony, along with allegations, declarations, and other evidence, provided substantial support for the class assertions).

Here, plaintiff Jimmy Bilskey's deposition testimony reflects that he was expected to arrive at work at a designated time, find his manager, learn from his manager which truck to drive and which helper was assigned to him for the day, check the product, check for appropriate fuel and oil in the truck, and then clock in. Plaintiff Bilskey testified that process took, on average, 30 minutes. Plaintiff further testified that, upon completing his deliveries and arriving back at the defendants' premises, the helper would exit the truck and clock them both out. (#28-1 at 28-30.) Plaintiff testified that, then, he would pull the truck around back, check the truck's engine and tires, go inside, complete the necessary paperwork, and turn in the "money bag" to Mike. (#28-1 at 43, 50.) That process took at least 30 minutes according to plaintiff Bilskey. (#28-1 at 50.) Plaintiff testified that he was told repeatedly by Mike Hughes, the manager, that the "policy" was that he was not to clock in until he had logged in to his handheld device and his truck was ready to pull out of the lot. (#28-1 at 37, 40.) Specifically, plaintiff stated that it "was just basically made plain to everybody that you don't log in or clock in till you're ready to go." (#28-1 at 40.) Other drivers were told the same thing by Mike Hughes. (#28-1 at 41, 47, 48.) Defendant Bluff City Ice's corporate representative testified that the drivers would find manager

4

Mike Hughes and get their assignments before clocking in, but the testimony was somewhat unclear as to whether they would get their equipment before or after clocking in:

> Q. So just to repeat those things, Bluff City Ice has testified that when a driver would initially report to its location, the first thing they'd do is find Mike Hughes, determine the route that they were driving that day?
>
> A. Uh-huh.
>
> Q. And the truck that they would have?
>
> A. Right.
>
> Q. Then they would go about determining which helper --
>
> A. Uh-huh.
>
> Q. -- that was assigned to them for that day? Then they'd get their scanners and clock in [on] their handhelds, I'm sorry, not scanners. So they'd get their scanners and clock in in the office?
>
> A. They would clock in before they ever did all that after they found me, yeah, after they got their equipment, yes.
>
> Q. So they'd find you and then clock in immediately?
>
> A. Once they found out the equipment that they needed and the helper they had.

(#28-3 at 92-93).

Plaintiff Bilskey further testified that he and other drivers took turns acting as the on-call driver for weekends in case a customer needed an ice delivery. In that case, the on-call driver would be compensated with two hours of pay plus whatever time the driver actually spent making deliveries on the weekend. The two hours of on-call pay was not compensated at an overtime rate even though it was in addition to a regular 40-hour workweek. Defendant Bluff

City Ice's corporate representative testified that policy applied to all drivers. (#28-3 at 145.) However, defendants maintain that their policy was not contrary to law. The Court does not resolve those disputes at this stage; to the extent defendants contend plaintiffs failed to state a claim with these allegations, they should have filed a motion to that end.

The defendants contend that the Court should not take into account plaintiff O'Hara's testimony in consideration of plaintiffs' motion because they say plaintiff last worked for defendants outside the class period.[2] Regardless of whether that is true, the Court need not take into account plaintiff O'Hara's testimony because "substantial allegations" are provided by plaintiff Bilskey.

In addition, the affidavits of Bluff City Ice's five current and two former employees are of little use at this juncture. The affidavits, which are fill-in-the-blank style documents, each state that the employee was not required to perform work off-the-clock. (#32-1.) However, there is no threshold number of opt-in plaintiffs required for conditional certification, and courts have afforded such "happy camper" affidavits no weight in similar FLSA suits at this early stage. *See Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011); *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, *18 (S.D. Tex. Aug. 10, 2012); *West v. Lowes Home Ctrs., Inc.*, No. 6:09–1310, 2010 WL 5582941, *8 (W.D. La. Dec.16, 2010); *see also Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317,

---

[2]Plaintiffs' complaint requests imposition of the three-year statute of limitations, which is permitted in lieu of the two-year statute of limitations where the cause of action arises out of a "willful" violation. *Laughlin v. Richland Shoe Co.*, 486 U.S. 128, 128-36 (1988). Defendants refer to a two-year statute of limitations when discussing application of plaintiff O'Hara's testimony. However, the defendants do not object to a three-year statute of limitations imposed in the proposed Notice.

330 (S.D.N.Y. 2010) ("I decline to wade into a thicket of competing factual assertions at this preliminary stage.").

The Court will grant conditional certification to plaintiffs.

**B.     Consent Form and Disclosures**

Plaintiff has provided a proposed notice and consent form for dissemination to members of the class. Plaintiffs represent that they modeled their proposed consent form "as closely as possible to the notice and consent form approved by Judge Webber in *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225 (E.D. Mo. 2007). Defendants have objected to several aspects of the proposed documents.

**1.     The Effect of Joining (or Not Joining) the Action**

Plaintiffs' proposed notice does not include language regarding the effect of joining or not joining the action. Defendants object and request that such information be included. Indeed, such information *is*, however, included in the *Huang* notice, which plaintiffs say they used as a model. The defendants' objection will be sustained.

**2.     Language in "Whom Does this Lawsuit Affect" Section**

Defendants object to language regarding the plaintiffs' contention regarding FLSA requirements because it duplicates language in the "Description of Lawsuit" section. The Court agrees. The objection is sustained.

**3.     Potential Plaintiffs' Legal Representation**

The plaintiffs' proposal includes a section that states plaintiffs will be represented by the Law Offices of Kevin J. Dolley, LLC. Defendants contend that opt-in plaintiffs should be advised that they may seek other counsel. Although including such language about selecting

7

separate counsel has not been the practice of this Court, defendants cite to a court that did so. *Compare Burkeen v. New Madrid Cnty. Ambulance Dist.*, 1:12-CV-154 SNLJ, 2013 WL 880079, *3 (E.D. Mo. Mar. 8, 2013) *with Pippins v. KPMG LLP*, 11 CIV. 0377 CM JLC, 2012 WL 19379, *14 (S.D.N.Y. Jan. 3, 2012). The New York court required, without discussion, the addition of a sentence that said "anyone who joins in the collective action has the right to hire his/her own attorney to represent him/her, at his/her own expense." *Pippins*, 2012 WL 19379, at *14. The Court continues to ascribe to its approach in *Burkeen*, and the objection is overruled.

### 4. Plaintiffs' Counsel as Depository

Defendants state that their counsel, not plaintiffs', should be the depository for opt-in plaintiff forms because defense counsel is in closer geographic proximity and is more convenient. Defendants' position ignores a plethora of legal and ethical considerations as well as the possibility for confusion. Defendants' objection is overruled.

### 5. The Consent Form

Finally, defendants object to the "consent form" because they say it improperly solicits clients. The Court has expressly rejected that position before. *See Littlefield*, 679 F. Supp. 2d at 1018. The objection is overruled.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to conditionally certify the class (#27) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiffs' proposed notice and consent form are to be modified as set out in the above memorandum, and an revised notice and consent form shall be filed with the Court no later than February 10, 2014.

Dated this   29th   day of January, 2014.

                                                                                 _____
                                                                                 UNITED STATES DISTRICT JUDGE