UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JIMMY BILSKEY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1:13-cv-62 SNLJ |
| | ) | |
| BLUFF CITY ICE, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs filed a five-count complaint against defendants Bluff City Ice, Inc., and its owner Carl Hughes, seeking to recover unpaid wages, liquidated damages, attorney fees, and other relief for violations of the Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA"), the Missouri Minimum Wage Law, §290.500 R.S.Mo. et seq. ("MMWL"), and Missouri common law. This Court conditionally certified the class sought to be represented by the named plaintiffs (#37). Trial in this matter is set for February 2015. Currently pending before the Court are five motions: defendant Bluff City Ice's motion for summary judgment (#47), defendant Hughes's motion for summary judgment (#52) and motion to dismiss (#55), and plaintiffs' motions to dismiss defendant Hughes (#65) and Count II of their complaint (#64).

**I.    Background**

According to the Complaint, plaintiffs Jimmy Bilskey and Leo O'Hara worked for the defendants as delivery drivers. Their duties included loading and unloading ice, ensuring the delivery truck was functional, stacking pallets, and making deliveries of ice

to customers. Plaintiffs allege that defendants violated the FLSA by failing to pay their non-exempt employees overtime rates for work in excess of 40 hours per week. Specifically, plaintiffs allege that their work hours were recorded by a time clock on which they and other employees "punched" in and out. Plaintiffs allege they were instructed not to punch in to work until they had completed approximately 30 minutes of "prep work" before their shifts began. Such prep work included checking to make sure their delivery trucks were fully functional and insuring product load was accurate. In addition, plaintiffs allege they were instructed to punch out of work before they performed approximately 40 minutes of "check-out work" after their shifts. Check-out work included checking the truck to make sure it was fully functional and filling out paperwork.

Plaintiffs purport to bring their claims on behalf of all similarly situated individuals. Count I is for failure to pay overtime in violation of the FLSA. Count II is for violations of the MMWL, including failure to pay overtime and failure to keep accurate records of hours worked. Count II-2[1] is for breach of contract for the alleged failure of defendants to compensate plaintiffs for all hours worked. Count III is for unjust enrichment and seeks damages equal to all unpaid wages from the five years preceding

---

[1]Plaintiffs have two Count IIs, which appears to be a typographical error. The Court has labeled the second "Count II" as "Count II-2."

the complaint. Count IV is for quantum meruit and similarly seeks damages equal to unpaid wages from the five years preceding the filing of the complaint.

## II.     Plaintiff's Motions to Dismiss

Although plaintiffs responded to defendant Hughes's motion to dismiss (#67), plaintiffs also moved to dismiss defendant Hughes without prejudice on the same date (#65). Plaintiffs' motion to dismiss will be granted, defendant Hughes will be dismissed without prejudice, and defendant Hughes's motions for summary judgment (#52) and to dismiss (#55) will be denied as moot.

## III.    Defendant Bluff City Ice's Motion for Summary Judgment

Defendant Bluff City Ice moves for summary judgment on plaintiffs' claims regarding defendant's "on call hours" policy. Defendant Bluff City also states that it should be granted summary judgment on FLSA claims originating more than two years before the complaint was filed.

### A.     Legal Standard

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the

3

facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

### B. On-Call Hours

Defendant's employees took turns being "on call" to make ice deliveries as needed on Saturdays. Plaintiffs claim that they should have been compensated for their hours on call. "Although there is no bright-line test for what constitutes compensable on-call time under the FLSA, the Supreme Court has suggested that if the employee was 'engaged to wait' the time would be compensable, however, if the employee was merely 'wait[ing] to be engaged' it would not." *Darrah v. Missouri Highway & Transp. Comm'n*, 885 F. Supp. 1307, 1310 (W.D. Mo. 1995) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 137

(1944)). As the court in *Darrah* observed, that terminology is of little use in practice, so it turned to a hypothetical set out by the Department of Labor in 1994: "Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable." 29 C.F.R. § 553.221(d) (1994).[1] The court observed that "the hypothetical presents a situation in which (1) the employee has no way of knowing if he will be called into work or not; (2) he must respond if and when he is called; and (3) he will be disciplined if he does not respond quickly. Despite these facts, the Code states that this individual will normally *not* receive compensation for such time." *Darrah*, 885 F. Supp. at 1311 (emphasis in original). The court thus concluded that "that any imposition created by an on-call policy must be *very significant* to justify compensation for time spent on call but not at work or working." *Id.* (emphasis in original). Put another way, this Court must ask whether the plaintiffs' "off-premises, on-call hours" were spent "predominantly for the benefit of the employer." *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir. 2001) (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)).

---

[1] Notably, that hypothetical is now more than 20 years old. It no longer appears in the Code of Federal Regulations at that section; indeed, that section is in the section of regulations specifically applicable to Fire Protection and Law Enforcement Employees of Public Agencies.

5

For example, where employees were required to vigilantly monitor radio transmissions, which could only be heard within 35-50 miles of the transmitter and which required constant attention that prevented the on-call employee from engaging in other activities, and respond to emergencies when required, their on-call time was compensable. *Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 917 (8th Cir. 1991). Under those circumstances, the court found, "a reasonable jury could find that the employees were engaged to wait while on subject-to-call status because the [employer's] policy sufficiently restricted them from using their time for personal pursuits." *Id.*

In support of their contention that their on-call time should be compensable, plaintiffs assert that (1) a driver's ability to engage in personal endeavors, such as caring for children, was restricted, because (2) drivers were required to be available by phone and to remain in the "local area" to permit them to be able to delivery ice when called, and (3) the defendant compensated on-call employees with a payment equal to two hours of the employee's base wage for days on call, whether or not the employee was actually called to delivery ice.

Defendants' on-call employees are free to engage in personal pursuits within the delivery area. Unlike the circumstances in the *Cross* case, in which the on-call employee had to monitor a radio at all times, plaintiffs here could participate in many activities within the local area while on-call. *Cf. Cross*, 938 F.2d at 917. The *Cross* court contrasted those plaintiffs' situation with one in which on-call employees were contacted

6

by telephone or pager. *Id.* On the other hand, the *Cross* plaintiffs were required to respond to emergency calls within thirty minutes and depart for the emergency immediately thereafter. *Id.* Here, it is not clear how quickly plaintiffs were required to respond to a call. Plaintiffs contend that they were required to "respond" within five minutes, but plaintiffs' cited exhibits do not support that contention --- rather, the deposition testimony cited[2] states that the deponent lived too far out of town to take an on-call shift and that that the "only drivers that he has on call are the ones that live in town….the ones that can get to the plant within five minutes or more." (#71-4 at 10.) Defendants cite their corporate representative deposition testimony to support that drivers did not have to respond within a certain amount of time; the deponent stated that "they had plenty of time, just at their discretion." (#71-3 at 153.) Plaintiffs contend that they were not free to decline a call if it came at an inconvenient time because rejecting a call would bring "the potential of serious repercussions from Defendant." (#62 at 2.) However, the deposition testimony cited merely states that "there would be complications." (#49-1 at 57.) Although "the degree to which drivers can decline or trade calls" may be a "a genuine issue of material fact that precludes summary judgment for either party" in some cases, *see Lanktree v. I-70 Towing, LLC*, No. 10-04124-CV-C-NKL, 2011 WL 4729726, at *6 (W.D. Mo. Oct. 6, 2011), there appears to be no such

---

[2] Notably, the plaintiffs cite to #49-4, Deposition of Snodgrass, 10:4-10, 29:18-29:6, but those pages are not included in the exhibit's deposition transcript excerpts. Page 10 of the deposition is included at document #71-4.

dispute here. Plaintiffs have failed to support their suggestion that that they risked termination if they were unable to respond to a call.

Looking to the totality of the evidence regarding plaintiffs' on-call circumstances, in the light most favorable to plaintiffs, the plaintiffs' personal pursuits were not "very significantly" affected when on call. *Darrah*, 885 F. Supp. at 1311. Plaintiffs could trade calls if they wanted to do something that would take them out of the local area, and they were free to engage in any activity so long as they were available by phone and could make ice deliveries if called upon. These facts are more akin to those of *Reimer*, 258 F.3d at 725, in which the court determined that on-call nurses were not entitled to compensation, than those of *Cross*, 938 F.2d at 917, in which the on-call forestry employees were required to monitor radio transmissions. Far from being "engaged to wait," plaintiffs were merely waiting to be called upon. *Id.* That is, plaintiffs' "off-premises, on-call hours" were *not* spent "predominantly for the benefit of the employer." *Reimer*, 258 F.3d at 725.

As for whether the fact that defendants paid an on-call "gratuity" supports that the on call time was compensable, plaintiffs cite no Eighth Circuit cases in support of this proposition. The cases plaintiffs do cite merely suggest that agreements between the parties could color whether the parties intended on-call time to be compensable. *See Berry v. Cnty. of Sonoma*, 30 F.3d 1174, 1181 (9th Cir. 1994). The "gratuity" paid here does not preclude summary judgment for defendants on this matter.

## C. Statute of Limitations

The parties disagree regarding which statute of limitations should apply to plaintiffs' FLSA claims. The FLSA typically applies a two-year statute of limitations to FLSA claims. However, "a cause of action arising out of a willful violation may be commence within three years after the cause of action accrued." 29 U.S.C. § 255(a). This matter was filed on April 21, 2013, so any cause of action under FLSA accruing prior to April 21, 2011 is time barred unless plaintiffs can make a showing that Bluff City Ice willfully violated FLSA.

In order to demonstrate a "willful" violation, the plaintiffs must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "Willful" refers to conduct that is voluntary, deliberate, or intentional, and "not merely negligent." *Id.* If the employer acts unreasonably but not recklessly, the employer's actions are not willful. *Id.* at 135 n.13. Plaintiff carries the burden of demonstrating that the violation is willful. *See id.* at 135.

Here, defendants contend that plaintiff has no evidence with which to show that the defendant acted willfully in its alleged FLSA violations. Plaintiffs claim that defendant violated the FLSA by (1) requiring plaintiffs to clock in after performing "prep work" and clock out before performing their end-of-the-day chores, (2) not compensating plaintiffs for their time spent on call, and (3) failing to pay overtime pay. Plaintiffs point

9

out that defendant rebuffed plaintiffs' complaints about pay policies and that defendant did not seek counsel regarding whether its on-call policy complied with the FLSA.

The Court has already determined that plaintiffs need not be compensated for their on-call time, unless they are actually called in to work. Which leaves the Court with plaintiffs' argument that the defendants had rebuffed their complaints about the clocking-in and clocking-out "policies." Defendants are adamant that no such policy existed, although they have not sought summary judgment on that matter. Plaintiffs contend that they complained to defendants about the alleged policy, but defendants state that they heard no complaints until this lawsuit was filed. Although this is a close issue, the Court declines to grant summary judgment on this matter. It may be revisited at trial.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motions to dismiss defendant Hughes (#65) and Count II of their complaint (#64) are **GRANTED**.

**IT IS FURTHER ORDERED** defendant Carl Hughes is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that defendant Hughes's motions for summary judgment (#52) and to dismiss (#55) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiff O'Hara's claim for violations of the Missouri Minimum Wage Law (Count II) is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that defendant Bluff City Ice's motion for summary judgment (#47) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** to defendant Bluff City Ice on plaintiffs' claims regarding the compensability of on-call time.

Dated this __30th__ day of January, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE